W. A. MACK, INC., an Illinois Corporation, Plaintiff-Appellee,

v.

GENERAL MOTORS CORPORATION, a Delaware Corporation, Defendant-Appellant.

No. 12379.

United States Court of Appeals Seventh Circuit.

Nov. 13, 1958.

Henry M. Hogan, Detroit, Mich., Frank F. Fowle, Chicago, Ill., Edward J. McGratty, Jr., Detroit, Mich., Walter I. Deffenbaugh, Chicago, Ill., Pope & Ballard, Chicago, Ill., of counsel, for appellant.

Albert E. Jenner, Jr., Prentice H. Marshall, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and FINNEGAN and SCHNACKENBERG, Circuit Judges.

DUFFY, Chief Judge.

This is an appeal from an order granting a preliminary mandatory injunction, compelling specific performance *pendente lite* of an automobile dealer franchise with reference to which defendant had given a notice of termination.

Plaintiff and its predecessor were Cadillac dealers in Chicago, Illinois, from

1928 to May 12, 1958. From 1934 to February 17, 1958, plaintiff and its immediate predecessor were also Oldsmobile dealers. During the period here in question, Walter A. Mack was the President and sole stockholder of plaintiff, and for many years had been in active charge of the business and affairs of plaintiff.

The terms and conditions of the Cadillac and Oldsmobile dealerships were contained in two series of substantially identical Selling Agreements which, from time to time, plaintiff and its immediate predecessor had entered into with Cadillac Division and Oldsmobile Division of defendant. The Agreements with the two divisions usually were entered into at approximately the same date.

The last Selling Agreement between plaintiff and defendant (Cadillac Division) is attached to the complaint. It was executed on July 2, 1956 to cover a period commencing March 1, 1956 and expiring October 31, 1960. This is the Agreement which defendant has been ordered to perform *pendente lite*.

Section 23 of the Selling Agreement deals with the rights of termination. Section 23A permits a dealer to terminate at any time without cause on thirty days' notice. Section 23B contains four subsections: 1) permits either the dealer or Cadillac to terminate for cause if either fails to secure or maintain any necessary license; 2) permits Cadillac to terminate for cause if dealer fails to conduct his business in accordance with "Terms and Conditions"; 3) permits Cadillac to terminate if the dealer or any person named in paragraph (3) of the Agreement dies or becomes incapacitated; and 4) permits Cadillac to terminate for cause upon the happening of certain specified events including (Section 23B(4)f) "Conviction of Dealer or any principal officer, principal stockholder or manager of Dealer * * of any crime which, in the opinion of Cadillac, may adversely affect the good will or interests of Dealer, dealership or Cadillac."

On January 13, 1954, Walter A. Mack was indicted on the charge of having wilfully attempted to defeat and evade a portion of the income taxes due and owing by plaintiff and by Mack for the year 1947. On September 3, 1954, a second indictment against Mack was returned referring to income taxes for the year 1948. On March 20, 1956, following a trial by jury, Mack was found guilty of the charge of attempting to defeat and evade a portion of the income taxes due and owing by W. A. Mack, Inc. for the year 1947. The jury was unable to agree as to the remaining charges. On May 23, 1956, judgment was entered upon the verdict and Mack was sentenced to imprisonment for a year and a day. An appeal was had to this Court where the judgment of conviction was affirmed, United States v. Mack, 7 Cir., 249 F.2d 321. Thereafter, a rehearing was denied, and on March 31, 1958, the Supreme Court denied certiorari. On April 18, 1958, the District Judge reduced the sentence to 181 days, and on May 1, 1958 Mack commenced the service of his prison sentence.

Twelve days after Mack commenced to serve his prison sentence, defendant's Cadillac Division, at the direction of James M. Roche, General Manager, sent to plaintiff a notice of termination as follows: "Please take notice that Cadillac Motor Car Division, General Motors Corporation, has elected to and does hereby terminate your current Cadillac Direct Dealer Selling Agreement, dated March 1, 1956, pursuant to the provisions of Section 23B(4)f thereof; said termination to be effective immediately." No similar notice of termination was issued by the Oldsmobile Division of defendant because plaintiff had voluntarily terminated its 1956 Oldsmobile Agreement in January, 1958. In taking this action, plaintiff acted under Section 23A whereby Dealer could terminate without cause on thirty days' notice.

During the period from January, 1954, when Mack was indicted, and March 31, 1958, when his conviction became final, the Cadillac Division and the Oldsmobile Division each entered into three separate Selling Agreements with plaintiff. The first was in October, 1954; the second in

October, 1955, which was prior to Mack's trial, and the third on July 2, 1956 during the pendency of the appeal from his conviction. The last named Agreement was accompanied by a letter from J. M. Roche, General Sales Manager of Cadillac, and addressed to Mack, stating that Cadillac, Motor Car Division was aware of Mack's conviction and that said conviction had been appealed and execution thereon had been stayed pending said appeal. The letter further stated: "3. that in so delivering said Selling Agreement to you Cadillac Motor Car Division does not waive any of its right of termination under the terms of said Selling Agreement delivered herewith, including without limitations any rights of termination arising out of the above referred to conviction or any conviction which may result upon any new trial which may be granted."

The letter asked Mack to acknowledge receipt of a copy of this letter in the space provided and to return same. Mack did so, and his endorsement appeared as follows: "Acknowledged and agreed to 7/2/56, W. A. Mack, Inc., By /s/ W. A. Mack, President."

When originally executed, plaintiff's 1956 Selling Agreements did not contain any provision obligating defendant to enter into any new Selling Agreements with any one in the event that the defendant should elect to terminate for cause under Section 23B(3) which would be for the death or incapacity of W. A. Mack. Under date of May 9, 1957, the parties entered a so-called Interim Agreement Addendum to plaintiff's 1956 Cadillac Selling Agreement (also Oldsmobile) whereby Cadillac agreed that if the right of termination were exercised under Section 23B(3) because of the death or incapacity of Walter A. Mack, it would offer a so-called Interim Selling Agreement to Mack's son, Walter M. Mack.

On December 31, 1957, eight days after this Court denied Mack's petition for rehearing, Mack wrote to the Cadillac Division that he had recently suffered a heart attack and that his physician had recommended that he discontinue all activities in W. A. Mack, Inc. He requested that the provisions in the Interim Agreement Addendum "be effectuated immediately." Cadillac Division replied that its obligation to effectuate the provisions of the Interim Agreement Addendum did not arise until Cadillac Division elected to terminate the Selling Agreement for cause due to death or incapacity, an election which Cadillac believed inadvisable to make. Although plaintiff terminated its Oldsmobile Agreement under Section 23A, it chose to continue as a Cadillac dealer, and did so until May 12, 1958 when defendant served its notice of termination as hereinbefore stated.

Plaintiff commenced this suit as an action in equity and obtained a temporary restraining order. It moved for a preliminary injunction compelling defendant, among other things, to continue to perform the Selling Agreement *pendente lite*. Defendant filed the affidavit of Roche in opposition. In this affidavit Roche states the Interim Agreement Addendum was executed only after plaintiff had been warned and had specifically recognized that such Agreement would, in no way, affect defendant's right to terminate the Selling Agreement in the event the conviction of Walter A. Mack was ultimately sustained.

By means of the temporary injunction, defendant was 1) restrained *pendente lite* from carrying out the termination of the (Cadillac) direct Selling Agreement; 2) restrained from disturbing or interfering with the *status quo* which existed December 30, 1957, and 3) restrained from enforcing the termination of the Interim Agreement Addendum. The Court found that plaintiff's remedy at law for damages was inadequate, and that the plaintiff might suffer irreparable damage unless a preliminary injunction were granted. The Court also found that despite the conviction of W. A. Mack, the sales of new Cadillac automobiles, accessories and parts by plaintiff have steadily increased.

We have never understood that conviction of a felony was a badge of

honor or added to the stature or qualifications of a dealer in automobiles. We may take judicial notice that the sale of various makes of automobiles increased generally during the period referred to in the trial court's findings. No proof was made as to the increase in sales by law-abiding Cadillac dealers during the same period. However, in considering whether a temporary injunction should issue, it was permissible for the court below to give some weight to the argument that defendant had not shown a definite ascertainable money loss by having one of its dealers sent to prison for income tax evasion.

▬▬ Our task on this appeal is made difficult because we are called upon to apply overlapping and, in some respects, *conflicting principles of law.* As a general proposition, we have stated that upon an appeal from the granting or denial of a preliminary injunction, this Court has a very limited scope of review. Westinghouse Electric Corp. v. Free Sewing Machine Co., 7 Cir., 256 F.2d 806, 808; Mytinger & Casselberry, Inc., v. Numanna Laboratories Corp., 7 Cir., 215 F.2d 382, 384. On the other hand, we have pointed out " * * * mandatory injunctions are rarely issued and interlocutory mandatory injunctions are even more rarely issued, and neither except upon the clearest equitable grounds." O'Malley v. Chrysler Corp., 7 Cir., 160 F.2d 35, 36.

▬▬ In any event, a preliminary injunction should not have been issued unless the complaint can be construed to make out a *prima facie* case. Plaintiff insists the allegations of the complaint must be taken as admitted because a formal answer thereto was not filed. Defendant made a motion to dismiss and also for summary judgment. It filed the affidavit of Roche and it is understandable why a formal answer to the complaint was not filed. On this appeal, in considering whether the complaint states a *prima facie* case, we take as admitted all the well pleaded allegations of the complaint. We then conclude that questions have been raised which are fair

ground for litigation. But this, in itself, does not determine whether there has been an abuse of discretion.

▬▬ Another well-established principle of law must be considered. The contracts here under consideration are for a stated period. A preliminary injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in a final decree. Calendars in the District Courts in the Northern District of Illinois are congested. If, upon remand, this case takes its normal course, the termination date of the Selling Agreement contract may well be reached before a trial on the merits is had, and a possible appeal therefrom has been decided. It is, therefore, imperative that this case be given precedence, and a trial on the merits be had at an early date.

Affirmed.