Susan L. ROSENSTIEL, Plaintiff,

v.

Lewis S. ROSENSTIEL, Defendant.

No. 67 Civ. 1883.

United States District Court
S. D. New York.

Dec. 14, 1967.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for plaintiff, Walter S. Beck, New York City, of counsel.

Saxe, Bacon & Bolan, New York City, for defendant, John A. Vassallo, New York City, of counsel.

## OPINION

TENNEY, District Judge.

On May 12, 1967, at 4:25 P.M., a judge of this court signed ex parte an Order to Show Cause in the within matter which provided *inter alia*:

> [T]hat pending the hearing and determination of plaintiff's motion for a temporary injunction herein, the defendant LEWIS S. ROSENSTIEL, and his attorneys, agents and all other persons acting for or on his behalf, be and they hereby are—pursuant to Rule 65(b) of the Federal Rules of Civil Procedure—restrained from prosecuting, going forward or otherwise taking or procuring to be taken or entered—by default—any Judgment or Decree of Divorce against the plaintiff herein, in the defendant's pending action for a divorce instituted by him in the Circuit Court of the 11th Judicial Circuit of Florida, in and for Dade County, Florida, on or about March 24, 1967 * * *

This temporary relief was sought in conjunction with plaintiff's motion for a preliminary injunction seeking the same relief. At the foot of the order, it was stated that no notice to defendant or his counsel was given

> because of the danger that after notice defendant might enter [a] final decree in the Florida action. The injury is

that entry of the Judgment in Florida before hearing the motion to this Court would render academic the prayer for injunctive relief in the complaint here and for the same reason the injury would be irreparable.

However, unbeknownst to the Court (and obviously without plaintiff's knowledge as well), a Final Judgment of Divorce was obtained by defendant against plaintiff in the Florida action at 11:28 A.M. on Friday, May 12, 1967, approximately five hours before the temporary restraining order was granted. This Judgment, while filed on the date rendered, was not "entered" or "recorded" in the Circuit Court Minute Book until the following Monday, May 15, 1967.

The aforementioned order to show cause, originally scheduled to be heard on May 16, 1967, was adjourned from time to time at the request of the parties until oral argument was eventually heard by this Court on June 13, 1967. Accordingly, by the time this case came on to be heard before me, plaintiff's original motion for a preliminary injunction had become moot. However, at oral argument and in plaintiff's papers submitted in support of the motion, plaintiff seeks to convert the original prohibitory injunction into a mandatory one requiring defendant to undo the acts admittedly completed and to punish defendant and/or his attorneys, agents or others acting in his behalf for non-compliance with the temporary restraining order. In conjunction with the latter issue, plaintiff served a notice to take the depositions of defendant's New York and Florida counsel and of the Honorable E. B. Leatherman, Clerk of the Circuit Court of the 11th Judicial Circuit, Dade County, Florida, and Fern E. Golding, Deputy Clerk of the same court. These depositions having been completed, the parties have, with the permission of the Court, filed further extensive evidentiary briefs and papers in support of their respective positions herein.

The questions presented involve circumstances surrounding the Florida pro-

ceedings and, perforce, the jurisdiction of this Court to issue the temporary restraining order or entertain the underlying action instituted herein by plaintiff. Said action was commenced contemporaneously with the original motion of May 12, 1967 and seeks a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 (1964) to determine plaintiff's rights under a certain ante-nuptial agreement entered into on the eve of their marriage and later amended. Additionally, plaintiff seeks a permanent injunction similar to the preliminary injunction requested in her original motion papers herein, and attorney's fees of $100,000.

Although the Rosenstiel marital discord has received an extensive airing in the public press and in legal proceedings and periodicals, a brief review of the pertinent facts may serve as a useful backdrop to the present dispute.

Plaintiff wife and defendant husband were married in New York City on November 30, 1956. This was plaintiff's second marriage, her prior marriage having been dissolved by a decree of absolute divorce in Mexico on October 2, 1954. The ante-nuptial agreement, as amended, provided that it should be interpreted and governed by New York law, and further provided that plaintiff's right to receive any benefits thereunder was subject to defeasance in the event she predeceased the defendant or in the event that they were "divorced or separated by decree of a court of competent jurisdiction or separated by written agreement * * *." prior to the death of defendant. (Exh. A to Complt. at 10.)

By October of 1961, the marital relationship appears to have cooled considerably and defendant allegedly demanded that plaintiff agree to a divorce on his terms, which she refused to do, whereupon she claims he abandoned her. On November 9, 1961, defendant instituted an action in Connecticut against her (a) for an annulment on the ground that he was fraudulently induced to marry her, and (b) for a divorce on the grounds of her cruel and inhuman treatment of him. Thereafter, on January 3, 1962, defendant amended his complaint in the Connecticut action to include an additional annulment count contending that plaintiff's prior Mexican divorce decree was void in that the Mexican court was without jurisdiction.[1] Plaintiff appeared specially in this Connecticut action, claiming that her husband was not a domiciliary of that State and that the marital res was not located there. Defendant discontinued the action on April 26, 1962, and on that same day instituted an action for an annulment in the Supreme Court of the State of New York for New York County.

Upon trial of the New York action, defendant husband was granted an annulment on the ground that the Mexican divorce decree dated October 2, 1954, entered upon the personal appearance of

---

1. The alleged circumstances surrounding the Mexican divorce decree, its nullification and eventual reinstatement have all the elements of a master work of intrigue. No detailed discussion of these events need be gone into since they are fully examined in Justice Greenberg's opinion in Rosenstiel v. Rosenstiel, 43 Misc.2d 462, 464–466, 251 N.Y.S.2d 565, 568–569 (Sup.Ct.) reversed on other grounds, 21 App.Div.2d 635, 253 N.Y.S.2d 206 (1st Dep't 1964), aff'd, 16 N.Y.2d 64, 262 N.Y.S.2d 86, 209 N.E.2d 709 (1965), cert. denied, 384 U.S. 971, 86 S.Ct. 1861, 16 L.Ed.2d 682 (1966). Suffice it to say that it is alleged that during the pendency of the Connecticut action, defendant, under the pseudonym "Samuel Goldsmith", fraudulently and without notice to plaintiff petitioned the Mexican court to nullify and vacate plaintiff's prior Mexican divorce decree on the ground that such decree had been entered without notice to the fictional "Samuel Goldsmith" in violation of his rights as a creditor of plaintiff and her former husband. A decree was entered ex parte by the Mexican court nullifying and vacating plaintiff's prior divorce. Plaintiff was ultimately successful in having the latter nullification decree declared invalid, and, on May 28, 1963, the original divorce decree of October 2, 1954 was reinstated.

plaintiff's then-husband and the appearance of plaintiff by Mexican counsel, was void. Rosenstiel v. Rosenstiel, 43 Misc. 2d 462, 251 N.Y.S.2d 565 (Sup.Ct.1964). The judgment of the New York court expressly reserved for determination plaintiff's right to support and maintenance and to attorney's fees. This New York decision was reversed, 21 App.Div.2d 635, 253 N.Y.S.2d 206 (1st Dep't 1964), the Appellate Division vacating the annulment, and the New York Court of Appeals affirmed this decision in 16 N.Y. 2d 64, 262 N.Y.S.2d 86, 209 N.E.2d 709 (1965). The Supreme Court then denied defendant husband's writ of certiorari. 384 U.S. 971, 86 S.Ct. 1861, 16 L.Ed.2d 682 (1966).

Shortly prior to denial of the writ of certiorari, plaintiff moved in the New York Supreme Court, pursuant both to the reservation in the judgment in the annulment action and N.Y. Domestic Relations Law, McKinney's Consol. Laws, c. 14, §§ 236, 237, for a determination of her right to and the amount of her support and maintenance, and attorney's fees. Her motion was granted and the trial was resumed for such purpose during the period September 13 to October 20, 1966 before Mr. Justice Helman. At that trial, defendant asserted as a defense to plaintiff's claim the charge that plaintiff had been guilty of cruel and inhuman treatment and abandonment, and the testimony of witnesses was submitted in support of this charge. Section 236 of the Domestic Relations Law expressly authorizes the Court to require a husband to provide suitably for the support of his wife, notwithstanding her misconduct "unless such misconduct would itself constitute grounds for separation or divorce." By decision dated November 30, 1966, the trial court found that plaintiff had not been guilty of conduct sufficient to sustain an action for divorce or separation against her and accordingly awarded her support and maintenance and attorney's fees. Rosenstiel v. Rosenstiel, N.Y.L.J., Dec. 1, 1966, p. 17, col. 7 (Sup.Ct.1966). On June 6, 1967, the Appellate Division modified the award but expressly affirmed the trial court's finding with respect to the wife's misconduct. 28 App.Div.2d 651, 280 N.Y.S.2d 624 (1st Dep't 1967) (per curiam). On November 29, 1967, this Appellate Division Order was affirmed without opinion by the New York Court of Appeals. N.Y.L.J., Dec. 1, 1967, p. 16, col. 1.

On or about March 24, 1967, and while this appeal of the support decree was pending, defendant instituted the Florida divorce action alleging that his wife had "been guilty of extreme cruelty" to him and had "also been guilty of habitually indulging in a violent and ungovernable temper." (Exh. H–1 to Complt. ¶ 5.) Plaintiff claims that these grounds are identical to those tried and determined in her favor in the New York action. However, after she was served by publication in the Florida action, she did not appear and defaulted therein rather than risk modification of the support award granted in New York. See Lynn v. Lynn, 302 N.Y. 193, 97 N.E.2d 748, cert. denied, 342 U.S. 849, 72 S.Ct. 72, 96 L.Ed. 640 (1951). Plaintiff claims that because of this risk she is precluded from exercising her right to invoke the full faith and credit provision of the United States Constitution (Art. 4, § 1) in the Florida action. See Estin v. Estin, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948).

Armed with these arguments, plaintiff returned to the New York Supreme Court seeking an injunction against defendant's prosecution of the Florida action. Justice Mangan denied the injunction, stating in pertinent part that

"as the pendency of an action is an indispensable prerequisite for the granting of an injunction, the court is without power to grant the relief now sought * * *. This procedural defect precludes consideration of the question of the husband's domicile and the other issues raised by movant." Rosenstiel v. Rosenstiel, 30758/1962, N.Y.Sup.Ct., April 21, 1967. (Citations omitted.)

Plaintiff then appealed to the Appellate Division and moved for an order restraining defendant from prosecuting the Florida divorce action pending the hearing and determination of her appeal, but the application for a stay was denied on May 4, 1967. On the afternoon of that date, defendant husband's Florida counsel filed a Praecipe for Default or Decree Con Professo and a default against plaintiff was entered. On May 5, 1967, after consultation with the Florida trial judge, the morning of May 12, 1967 was set down as the date for a final divorce hearing. The rest of the relevant facts have been previously set forth: a final judgment of divorce was signed and filed at 11:28 A.M. on May 12, 1967, the restraining order was granted some five hours later and the divorce was "entered" or "recorded" in the Circuit Court Minute Book on May 15, 1967.

With these facts in mind, I turn to a consideration of the applicable law.

*Jurisdiction*

■ The federal district courts sitting in the several states have no jurisdiction over actions for divorce and alimony. See State of Ohio ex rel. Popovici v. Agler, 280 U.S. 379, 383, 50 S.Ct. 154, 74 L.Ed. 489 (1930); Simms v. Simms, 175 U.S. 162, 167, 20 S.Ct. 58, 44 L.Ed. 115 (1899); Barber v. Barber, 21 How. 582, 62 U.S. 582, 16 L.Ed. 226 (1858). Here, however, plaintiff, in effect, is seeking a declaration of her marital status under the Constitution of the United States (specifically, the full faith and credit clause),[2] "and there is no reason why a declaratory action should not prima facie lie to determine the controverted status of the parties." Southard v. Southard, 305 F.2d 730, 731 (2d Cir. 1962). An action to determine the validity of a divorce decree is not technically a divorce action although, in effect, it determines the marital relationship of the parties involved. 6A Moore, Federal Practice ¶ 57.21[2], at 3125 (2d ed. 1966). However, in order for the federal district courts to assume jurisdiction of such a domestic relations dispute, there must be present the requisite diversity of citizenship and satisfaction of the monetary requirement imposed by 28 U.S.C. § 1332(a), and a constitutional claim which is not frivolous. See Hernstadt v. Hernstadt, 373 F.2d 316, 317–318 (2d Cir. 1967); Southard v. Southard, supra.

■ There is no dispute herein either as to diversity of citizenship or to jurisdictional amount, and it is clear that the constitutional claim presented is not frivolous.[3] Accordingly, this Court has

2. If plaintiff's assertion that granting full faith and credit to the New York decree would bar the entry of the divorce decree in Florida on the grounds alleged is valid, then she is not barred from raising the claim in the instant action in this court and such claim would survive the Florida decree. If her claim of full faith and credit is not well founded, her remedy would appear to have been to appear in the Florida action and assert that the defendant husband herein was collaterally estopped in the Florida action from attacking the findings of the New York court. However, at the time the instant action was instituted in this court, plaintiff had already defaulted in the Florida action so that it appears doubtful that such a defense was still available to her or could have been preserved by the injunctive process.

3. Although the full faith and credit argument is not frivolous, it is by no means free from doubt. Defendant argues that the Florida law as to cruel and inhuman treatment is different than the New York law so that he is not bound by the New York decision. In answer to this, plaintiff points to Aghnides v. Aghnides, 159 N.Y.S.2d 343 (Sup.Ct.), aff'd, 4 App. Div.2d 498, 167 N.Y.S.2d 201 (1st Dep't 1957), cert. denied, 358 U.S. 823, 79 S.Ct. 36, 3 L.Ed.2d 63 (1958), wherein it was stated:

"The only basis on which the defendant herein could hope to succeed in Indiana is on the theory that the Indiana law is different from ours and that the conduct of his wife, held by our courts not to give him just cause for leaving her, would be regarded by the Indiana courts as grounds for a divorce. Apart from the fact that such a holding *would appear to be a denial of full faith and credit*, Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 445–446, 64 S.Ct. 208, 88 L.Ed. 149,

jurisdiction to entertain the declaratory judgment action and the instant motions.

### The Effect of the New York State Court Action on the Instant Application.

Defendant argues that plaintiff is barred from obtaining the injunctive relief sought herein since she was denied identical relief in the New York courts. It is true that substantially the same arguments were raised in the State courts as are present here. Justice Mangan found that

> "Aside from the jurisdictional impediment to granting the injunctive relief herein sought, the defendant has amply demonstrated, by documentary evidence and by testimony in the Supreme Court action and in a prior Civil Court action, long before commencement of the present action in Florida, that he is now domiciled in the State of Florida. There has been no showing by defendant to the contrary. Under the circumstances, the issuance of the injunction would be an unwarranted interference with the orderly judicial processes of the State of Florida." (Emphasis added and citations omitted.)

However, the prior portion of Justice Mangan's opinion, as set forth supra, indicates that the decision reached by her was that the New York Supreme Court had no jurisdiction to grant the relief requested and that her finding that defendant was a Florida domiciliary was a mere gratuitous determination entitled to no weight on the instant motion. Moreover, accepting defendant's Florida domicile as established, this would not be a factor that would prohibit this Court from taking action and, indeed, would

be one of the factors necessary to establish the diversity jurisdiction which permits this Court to act.

■ Nor is there merit to defendant's claim that plaintiff's action is properly characterized as "forum shopping". Such a doctrine implies the existence of two forums having jurisdiction over the dispute. Here, Justice Mangan specifically held that the New York State courts have no jurisdiction.

■ Accordingly, this Court finds that the New York court's refusal to grant an injunction presents no bar to the institution of the instant action nor to a consideration of plaintiff's motions.

### Should a Preliminary Injunction Be Granted?

■ Serious doubt exists as to whether plaintiff was entitled to certain of the temporary relief originally sought, i.e., an injunction against further prosecution by defendant of the Florida divorce action, which relief the May 12, 1967 temporary restraining order was designed to protect. While the court has *jurisdiction* over plaintiff's declaratory judgment action, it appears that the *power* to grant the interlocutory injunction originally sought by plaintiff is lacking. Plaintiff's motion which attempted to enjoin the parties from acting in Florida is, in effect, an effort to enjoin the Florida court proceedings and the statutory bar to an injunction created by 28 U.S.C. § 2283 (1964) cannot be "avoided by directing the injunction solely to a party as distinguished from the state court * * *." Studebaker Corp. v. Gittlin, 360 F.2d 692, 696 (2d Cir. 1966); see Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co., 309 U.S. 4,

---

*the defendant is clearly trying to evade the laws of his home state,* and, that in itself is a cogent reason for granting an injunction against the foreign action." 159 N.Y.S.2d at 349. (Emphasis added.)

It should be noted that, in *Aghnides,* the Court based its holding on the finding that defendant was clearly attempting "to evade New York law while still remaining a resident of this state." Id.

at 350. Plaintiff in the instant case is not alleging that defendant is a citizen of New York. In fact, such an allegation would defeat diversity and leave this Court without jurisdiction.

However, in light of the decision reached infra that plaintiff is not entitled to prevail on the instant motions, no consideration of the merits of the full faith and credit argument need be considered at this time.

9, 60 S.Ct. 215, 84 L.Ed. 447 (1940); H. J. Heinz Co. v. Owens, 189 F.2d 505, 507 (9th Cir. 1951), cert. denied, 342 U.S. 905, 72 S.Ct. 294, 96 L.Ed. 677 (1952). Hence, in order for a federal district court to enjoin state court proceedings, the authority to do so must be found within one of the three exceptions enumerated in § 2283, to wit, (1) that the injunction is expressly authorized by an Act of Congress; (2) that it is necessary in aid of the federal court jurisdiction, or (3) that it is required to protect or effectuate its judgments. And the provisions of the Declaratory Judgment Act create no statutory exception to § 2283. Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

In the instant case, an injunction is not expressly authorized by Acts of Congress, nor is it necessary in aid of the Court's jurisdiction. Moreover, it is not needed to protect or effectuate a judgment of this Court since (a) there is no judgment of a federal district court in existence at this time in this matter and (b) any judgment that this Court might render will be operative and effective regardless of the action taken in Florida.[4]

 However, even assuming power in this Court and the validity of plaintiff's request, injunctive relief must still be refused. It is to be recalled that the relief now sought by plaintiff is that defendant take affirmative steps to vacate the Florida divorce decree.[5] Generally speaking, the purpose of a preliminary injunction is to preserve the status quo pending final determination after a full trial on the merits. See Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 742 (2d Cir. 1953); cf. Grant v. United States, 282 F.2d 165, 168 (2d Cir. 1960). While it is usually possible to attain this goal by prohibitory injunction, at times the issuance of a mandatory writ will be necessary. 7 Moore, op. cit. supra at ¶ 65.04[1]. However, a mandatory injunction should not be granted prior to final hearing "except in circumstances of the clearest and most urgent necessity * * *." Eighth Regional War Labor Bd. v. Humble Oil & Ref. Co., 145 F.2d 462, 464 (5th Cir. 1944), cert. denied, 325 U.S. 883, 65 S.Ct. 1577, 89 L.Ed. 1998 (1945); see W. A. Mack, Inc. v. General Motors Corp., 260 F.2d 886 (7th Cir. 1958); Clune v. Publishers' Ass'n, 214 F.Supp. 520 (S.D.N.Y.), aff'd per curiam, 314 F.2d 343 (2d Cir. 1963). Furthermore, under most circumstances, a preliminary injunction will not issue where it would give plaintiff the actual advantage to be obtained in a final decree. W. A. Mack, Inc. v. General Motors Corp., supra, 260 F.2d at 890; Foundry Servs., Inc. v. Beneflux Corp., 206 F.2d 214 (2d Cir. 1953); Gross v. Kennedy, 183 F.Supp. 750, 757 (S.D.N.Y.1960); Carey v. General Elec. Co., 165 F.Supp. 127 (S.D.N.Y.1958).

 It is fundamental law that the grant or denial of the preliminary injunction will rest in the sound discretion of the court and such court will be called on to "balance the equities" or "balance the conveniences". 7 Moore, op.

---

4. Plaintiff argues that an injunction is necessary to prevent a fraud from being perpetrated on the Florida courts, such fraud consisting of defendant's failure to inform the Florida divorce court of the findings in the New York support decree. It has been held that *enforcement* of a state court judgment may be enjoined where such judgment has been obta'ned by fraud. But plaintiff seeks to enjoin *entry* rather than *enforcement* of such a decree. Aside from this, the power of the federal courts to enjoin even the enforcement of a fraudulent decree is subject to grave doubt in light of the 1948 revision of § 2283. See 1 Barron

& Holtzoff, Federal Practice & Procedure § 46 (Supp.1966). But see 1A Moore, Federal Practice ¶ 0.226 (2d ed. 1965).

5. It is possible to treat plaintiff's request in two ways: First, plaintiff seeks the vacation of defendant's divorce as punishment to be imposed for his contempt. Once this is accomplished, plaintiff would seek to preserve the then-status of the parties by a prohibitory preliminary injunction. Since this Court finds infra that defendant's conduct was not contemptuous, it is necessary to determ'ne plaintiff's alternative position which is set forth in the body of this opinion.

cit. supra at ¶ 65.18[3]. To be most importantly considered are the hardship to plaintiff if the injunction be granted, the benefit to plaintiff (Ohio Oil Co. v. Conway, 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972 (1929) (per curiam)) and the relative hardship to which a defendant will be subjected. Corica v. Ragen, 140 F.2d 496 (7th Cir. 1944); Smith v. Staso Milling Co., 18 F.2d 736 (2d Cir. 1927).

■ Applying the law to the facts of the instant case, I find that defendant will be more inconvenienced if the injunction were to be granted than plaintiff will be harmed if the injunction relief is denied. If plaintiff's motion were granted, defendant would be required to retrace his steps, have his divorce decree vacated [6] and then face the possibility of having to start prosecuting his divorce action anew if he is successful in the case at bar after a full trial on the merits. On the other hand, if the injunction does not issue, plaintiff will not be irreparably harmed since the same relief can be granted her after trial. Plaintiff does not allege that defendant is contemplating taking any further action at this time or that any further action would be detrimental to her, nor does she show how advancing the date of the determination of her status vis-a-vis the ante-nuptial agreement (assuming, *arguendo*, her success at the trial) would be beneficial to her. Nor has this Court been advised as to how a final decree in the instant action would be incapable of protecting her by leaving the parties as they were before the Florida proceedings were completed. Furthermore, the granting of the relief requested would give plaintiff a substantial part of the relief she might obtain in a final decree and, under the circumstances of this case, such request should be denied unless there is present the most urgent necessity.

In sum, plaintiff has failed to establish such irreparable harm as would warrant granting the relief sought. It is most clear that defendant would suffer a far greater hardship if the instant motion were to be granted than plaintiff will endure if her request is denied.

Accordingly, plaintiff's motion for a preliminary injunction will be denied.

### The Issue of Contempt [7]

■ I have previously noted herein my view that this Court lacked the power to enjoin temporarily or preliminarily the Florida court action. An order issued by a court having jurisdiction over the parties and the subject matter will nevertheless be void if the court had no power to issue such order, for the order itself is beyond the jurisdiction of the court. Ex parte Fisk, 113 U.S. 713, 719, 5 S.Ct. 724, 28 L.Ed. 1117 (1885); see United States v. Thompson, 319 F.2d 665, 668 (2d Cir. 1963). And the Court may not punish for the violation of such an order. Ex parte Fisk, supra; United States v. Thompson, supra.

---

6. It has been brought to the Court's attention that defendant was married again on June 17, 1967. The Court will not consider this voluntary act of defendant as any evidence of hardship, nor will it be considered against him on the contempt issue since it is clear that any restraining order had expired by its terms at the time of the subsequent marriage.

7. It would appear that the contempt proceedings have not been properly commenced in that proper notice of such proceedings was not given. However, defendant has not questioned the validity of plaintiff's motion and has been given ample opportunity to defend, so that conservation of judicial manpower would warrant a determination of this motion on the merits at this time. See generally 3 Barron & Holtzoff § 1439, at 507 (Wright ed. 1958). Moreover, it is abundantly clear that defendant is not prejudiced by this approach in light of the determination reached herein.

However, even assuming the validity of the restraining order of May 12, 1967, I am of the opinion that for the reasons to be developed defendant has not been in contempt thereof.

A party seeking to punish his adversary for civil contempt must satisfy his burden of proof by clear and convincing evidence. Hart Schaffner & Marx v. Alexander's Dep't Stores, Inc., 341 F.2d 101, 102–103 (2d Cir. 1965) (per curiam); Stringfellow v. Haines, 309 F.2d 910, 912 (2d Cir. 1962). And a violation of an injunction may be found even if its "strict letter" has been complied with if, in fact, "the spirit of the injunction" has been disregarded. John B. Stetson Co. v. Stephen L. Stetson Co., 128 F.2d 981, 983 (2d Cir. 1942); see Hollander v. Hollander, 318 F.2d 818 (2d Cir.) (per curiam), cert. denied, 375 U.S. 831, 84 S.Ct. 78, 11 L.Ed.2d 63 (1963). Moreover, the absence of wilfulness will not be a defense to a civil contempt motion. McComb v. Jacksonville Paper Co., 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949); United States v. Ross, 243 F.Supp. 496 (S.D.N.Y.1965). However, the Court is of the opinion that the temporary restraining order, having been granted ex parte, must be construed most strictly against the party seeking to punish the alleged contemnor. Also, it must be borne in mind that the order was in the nature of a prohibitory restraining order rather than a mandatory one and, as hereinbefore stated, an application for mandatory relief will be more stringently considered than will a motion for a prohibitory injunction.

With these general principles set forth, I turn to a consideration of the case at bar. The pertinent provisions of the May 12, 1967 restraining order have been set forth supra. It is not disputed that the Florida divorce action proceeded to final judgment some five hours prior to the signing of the restraining order. The divorce decree was signed by the presiding judge and filed for the record at 11:28 A.M. The divorce decree was entered in the progress docket on Monday, May 15, 1967, and was immediately forwarded to a clerk to be recorded in the minute book. Plaintiff claims that defendant's contemptuous conduct consisted of failing to take steps to prevent the Clerk of the Court from acting on May 15, 1967, concededly after defendant's Florida and New York counsel were aware of the substance of the restraining order. The Court finds this contention without merit.

Interpreting the restraining order strictly, defendant was restrained from taking any affirmative action to obtain the Florida divorce.[8] By the time that defendant's counsel was made aware of such order, any affirmative action had already been completed. In short, I do not consider defendant's inaction to be a violation of the temporary restraining order. Indeed, had the order required the taking of affirmative action by defendant, I am convinced that the ex parte judge would have notified opposing counsel and given them an opportunity to be heard on the question because of the more stringent test to be utilized where mandatory action is sought.

All factors lead to the conclusion that defendant and his counsel are not in contempt. If defendant were so anxious to act, why was nothing done from March 24, 1967 until May 4, 1967? It would appear that no greater sanctions would be incurred by violating a restraining order of the New York State courts than an order of this court. Moreover, if defendant so desired, the entries that were made on May 15, 1967 could have been made on May 12, 1967, immediately after

---

8. Note that the asserted danger mentioned in the temporary restraining order was an affirmative act, i. e., that *"defendant* might enter [a] final decree in the Florida action"*, and not that the Clerk of the Court might enter the decree.

the filing of the decree, by simply asking the Clerk's Office for such a procedure to be followed.[9] It does not appear that such a request was made. It is perfectly obvious that counsel for defendant thought that once the divorce decree was filed nothing further was to be done and that any further recording steps would take place on that same day. It does not seem likely that when counsel were informed of the restraining order on the morning of May 13, 1967, they thought there was anything else they might do to comply with such order.

Plaintiff argues that under Florida law the judgment is not deemed valid until recorded by the Clerk in the progress docket and is not deemed entered until it has been recorded by the Clerk in the Circuit Court Minute Book. Whether this argument has merit need not be considered herein since the Court holds that the order of May 12, 1967 did not require defendant to take any *affirmative* action with regard to the finalization of the divorce decree.[10]

Accordingly, plaintiff's motion to hold defendant in contempt is denied.

### Conclusions

This Court having found that there is no basis for granting plaintiff a preliminary injunction nor for holding defendant in contempt, plaintiff's motion is in all respects denied.

The findings of fact and conclusions of law, as required by Rule 52(a) of the Federal Rules of Civil Procedure, are contained herein.

It is so ordered.

9. At his deposition, the Honorable E. B. Leatherman, Clerk of the Circuit Court of the 11th Judicial Circuit, Dade County, Florida, testified that such a procedure is available and is utilized by Florida attorneys from time to time. See Leatherman Deposition at 193. There is, however, no indication in the record that counsel for defendant knew they could go forward in such a manner.

10. As part of the punishment for contempt, plaintiff seeks an order of this Court compelling defendant to take mandatory action to vacate the decree. This amounts to the same relief now sought in the motion for a preliminary injunction. Since the Court finds defendant's conduct not contemptuous, this request for relief will be denied. See note 5, supra.