WISCONSIN BELL, INC. d/b/a Ameritech Wisconsin, Plaintiff,

v.

TCG MILWAUKEE, INC., Public Service Commission of Wisconsin, Cheryl L. Parrino and Joseph P. Mettner, Commissioners of the Public Service Commission of Wisconsin, Defendants.

No. 98–C–366–C.

United States District Court,
W.D. Wisconsin.

June 10, 1998.

Bradley D. Jackson, Foley & Lardner, Madison WI, for Wisconsin Bell, Inc. Ameritech Wisconsin, plaintiff.

Kathleen M. Mulligan, Sidley and Austin, Chicago IL, for TCG Milwaukee, Inc.

Mary M. Stevens, Public Service Commission, Madison WI, for Public Service Commission of Wis Parrino, Cheryl L. Mettner, Joseph P.

Peter Gardon, Reinhart, Boerner, et al., Madison WI, for Time Warner Communications.

Michael L. Shor, Swidler & Berlin, Washington DC, for U.S. Xchange, L.L.C. (Intervenor).

## OPINION AND ORDER

CRABB, District Judge.

In this civil action for declaratory and injunctive relief brought under 47 U.S.C. § 252(e)(6), part of the Telecommunications Act of 1996, plaintiff Wisconsin Bell seeks review of a determination of defendant Public Service Commission of Wisconsin interpreting and enforcing provisions of the interconnection agreement between plaintiff and defendant TCG Milwaukee. In a final decision issued May 7, 1998, defendant commission ordered plaintiff to make "reciprocal compensation" payments to defendant TCG for calls

placed by plaintiff's customers to internet service providers (ISP's) served by defendant TCG. The parties' interconnection agreement requires reciprocal compensation payments for transport and termination of "local traffic" that originates with one party and terminates with the other. In making its determination, defendant commission concluded that calls from plaintiff's customer's to defendant TCG's internet service providers qualified as "local traffic" under the agreement.

Now before the court is plaintiff's motion to stay the defendant commission's order to make payments pending review of that order by this court. Plaintiff contends that the stay should be automatic because the commission's order provides for monetary relief only and because plaintiff is willing to post a supersedeas bond, as required by Fed. R.Civ.P. 62(d). Alternatively, plaintiff contends that a stay is appropriate under the four-part preliminary injunction test. I conclude that plaintiff is not entitled to an automatic stay because Rule 62(d) does not apply to this matter, either directly or by analogy. Additionally, a stay is not appropriate under the appropriate preliminary injunction standard because plaintiff has not demonstrated that it will suffer irreparable harm from allowing the commission's order to go into effect.

## BACKGROUND FACTS

Plaintiff and defendant TCG Milwaukee are both telecommunications carriers that compete to provide local service to telephone customers in Wisconsin. As required by the Telecommunications Act of 1996, plaintiff and defendant TCG entered into an interconnection agreement, which was approved by defendant commission on March 5, 1997. The agreement requires each carrier to pay the other "reciprocal compensation" for "transport and termination of local traffic" that originates with one carrier but terminates with the other. This occurs when a customer of plaintiff places a local call to a customer of defendant TCG (or vice versa). The call "originates" with the caller on plaintiff's local network and is routed to defendant TCG's network, where it terminates at the home of the person receiving the call. The agreement defines "local traffic" as "local service area calls as defined by the Commission [defendant Public Service Commission]." Under the agreement, the parties do not pay reciprocal compensation for any calls that go through "switched exchange access service" (such as long distance carriers), even if those calls are routed through the networks of both local carriers.

Defendant TCG has as customers several internet service providers, or "ISP's". Customers connect with these providers by dialing a local phone number and they pay local rates to their carrier for these connections. Before July 3, 1997, the parties treated calls to ISP's as local traffic under the agreement and made reciprocal compensation payments when applicable. On July 3, 1997, plaintiff announced that it would no longer make reciprocal compensation payments for calls from its customers to ISP's because it had decided that such calls did not qualify as local traffic. After negotiations to resolve this dispute failed, defendant TCG filed a complaint and request for contract resolution with defendant commission in September, 1997. An informal staff determination in favor of defendant TCG was issued on March 31, 1998 and upheld by defendant commission on May 7, 1998. The commission concluded that calls to ISP's were subject to the reciprocal compensation provisions of the agreement and ordered plaintiff to pay defendant TCG for reciprocal compensation withheld in the past and all future reciprocal compensation as it came due.

## OPINION

### A. Jurisdiction over Review

47 U.S.C. § 252(e) authorizes state public service commissions to approve or reject the interconnection agreements between local carriers mandated by 47 U.S.C. § 251. Section 252(e)(6) provides in pertinent part as follows:

> In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the re-

quirements of section 251 of this title and this section.

Restated, this court has jurisdiction to review decisions of defendant commission made under § 252(e). However, it is unclear whether the decision challenged here was made under the auspices of that statute, given that it involved the interpretation and enforcement of an existing interconnection agreement rather than the approval or rejection of an initial agreement. The defendant commission assumed that its ruling was authorized by § 252(e), *see* Complaint, Exh. B, (written decision of commission asserting jurisdiction under § 252(e) and state law provisions), and the parties have not questioned the corresponding jurisdiction of this court under § 252(e)(6).

Because I am not taking the affirmative step of staying the decision of defendant commission and because the parties have not been heard on this issue, I will not make a ruling at this time regarding the existence of jurisdiction in this matter under § 252(e)(6). The parties are invited to address the subject in their briefs on summary judgment or in a separate, supplemental briefing.

### B. *Stay*

██ Defendant TCG contests this court's jurisdiction to issue the temporary relief sought by plaintiff, the staying of the order of defendant commission. In support of its position, defendant TCG cites the Anti–Injunction Act, 28 U.S.C. § 2283, and notions of federalism and comity. In the seven pages defendant TCG devotes to this argument in its brief, it fails to address the fact that Congress has authorized federal courts to review and completely reverse the decisions of state commissions under 47 U.S.C. § 252(e)(6). This broad statutory grant of authority must include the lesser power to stay commission decisions pending review; it is illogical to conclude otherwise. Assuming this court has jurisdiction to review the challenged decision of defendant commission (see above), it has jurisdiction to stay that decision pending a final determination.

██ Federal Rule of Civil Procedure 62(d) provides that a party appealing a money judgment issued by a district court may have that judgment stayed pending appeal by giving a supersedeas bond. Plaintiff argues that Rule 62(d) should apply by analogy to the case at hand, which is effectively the appeal of a money judgment issued by defendant commission. Plaintiff has identified no supporting application of Rule 62(d)'s automatic stay provisions to these circumstances, and I am unconvinced that doing so by analogy would be appropriate. Rule 62(d) requires a district court to stay its own judgment while that decision is reviewed by an appellate court in the same federal system. Here, plaintiff asks a federal court to stay the order of a state administrative body. This extension of Rule 62(d) raises federalism concerns not otherwise invoked by the rule, concerns that preclude the application of the automatic stay provisions to the current situation.

██ Stripped of Rule 62(d), plaintiff's request for a stay turns on the four-part test for preliminary injunctive relief. Under that test, plaintiff must demonstrate that 1) it possesses a likelihood of success on the merits; 2) no remedy at law exists and irreparable harm will result if the stay does not issue; 3) the harm it will suffer absent a stay outweighs the harm defendant would receive as a result of the stay; and 4) the public interest favors issuance of the stay. *See Grossbaum v. Indianapolis–Marion County Building Authority*, 63 F.3d 581, 585 (7th Cir.1995). Because plaintiff has failed to make the necessary showing of irreparable harm, I reject his request for a stay without considering the remaining three prongs of this test.

██ Irreparable harm means injury of such a nature that monetary compensation cannot atone for it. *See Graham v. Medical Mutual of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997). Plaintiff attempts to establish three independent irreparable harms it will suffer if the stay is not issued: a loss of customers and goodwill, the subversion of interconnection agreement negotiations and increased strains on its Wisconsin networks. Each of these arguments is based on the premise that defendant TCG and other local carrier com-

petitors will rely on the reciprocal compensation payments ordered by defendant commission either to underbid plaintiff in obtaining the business of internet service providers or to gain a strategic advantage in current negotiations for interconnection agreements. However, the stay at issue controls the availability of reciprocal compensation only during the relatively short period it will take to reach a final decision in this matter. Moreover, this denial of the stay for failure to show irreparable harm gives no indication as to how the case will be resolved on its merits. It is unlikely that defendant TCG or plaintiff's other competitors will target ISP customers or drop their rates to those customers in reliance on reciprocal compensation payments when those payments could be lost in a matter of weeks. Similarly, because the legal status of reciprocal compensation requirements for ISP business remains unknown irrespective of the stay, issuance or denial of the stay should not benefit either parties' bargaining position in negotiations for new interconnection agreements. Because plaintiff has not demonstrated that it will suffer any irreparable harm from allowing the May 7, 1998 decision of defendant commission to take effect, its request for a stay of that decision will be denied.

ORDER

IT IS ORDERED that plaintiff Wisconsin Bell, Inc.'s motion for approval of supersedeas bond and stay of defendant Public Services Commission of Wisconsin's May 7, 1998 order is DENIED.