PHILLIPS, NIZER, BENJAMIN, KRIM & BALLON, Plaintiff-Appellee,

v.

Lewis S. ROSENSTIEL, Defendant-Appellant.

No. 59, Docket 73-1568.

United States Court of Appeals, Second Circuit.

Argued Nov. 5, 1973.

Decided Dec. 10, 1973.

efforts to institutionalize exculpatory tariffs, see A. Parks *supra* at 484–489.

Walter S. Beck, New York City (Dinsmore Adams, Janet P. Kane and Phillips, Nizer, Benjamin, Krim & Ballon, New York City, of counsel), for plaintiff-appellee.

Roy M. Cohn, New York City (Saxe, Bacon, Bolan & Manley, New York City, of counsel), for defendant-appellant.

Before WATERMAN, FRIENDLY and TIMBERS, Circuit Judges.

FRIENDLY, Circuit Judge:

I.

After twelve years of litigation, with countless suits in the courts of New York, Connecticut and Florida, the much-publicized marital dispute between Lewis and Susan Rosenstiel has improbably found its way into a federal court of appeals. The original marital dispute is now far behind; what brings the parties here is the mundane subject of attorneys' fees.

The plaintiff, a New York law firm which represented Susan in a variety of matters between 1962 and 1968, brought this suit in the District Court for the Southern District of New York, under 28 U.S.C. § 1332, claiming that under New York law Rosenstiel, then a citizen of Connecticut and later of Florida, was liable for a variety of legal services that the firm had rendered to Susan.

The Rosenstiels were married in New York in 1956.[1] By 1961 they had separated, and their legal battles soon began. Lewis initially sought an annulment on the ground that Susan's earlier Mexican divorce was invalid. After a bitter squabble involving allegations of inter-

---

1. The parties have not questioned that the case is to be decided under the laws of New York rather than of Connecticut.

national intrigue and bribery, the New York appellate courts reversed the annulment decree. Rosenstiel v. Rosenstiel, 21 A.D.2d 635, 253 N.Y.S.2d 206 (1st Dep't 1964), rev'g 43 Misc.2d 462, 251 N.Y.S.2d 565 (Sup.Ct.), aff'd, 16 N.Y.2d 64, 262 N.Y.S.2d 86, 209 N.E.2d 709 (1965), cert. denied, 384 U.S. 971, 86 S.Ct. 1861, 16 L.Ed.2d 682 (1966). The parties then returned to the New York State Supreme Court for a determination of the support and maintenance payments due to Susan during the separation, and the counsel fees that should be awarded her lawyers. The state judge granted a sizeable sum on each count, awarding the plaintiff law firm $360,000 for its services and Susan $2400 per month after taxes as alimony. The law firm had sought more than $600,000 in counsel fees for its services in that case and in a variety of other actions in which it had represented Susan, but the court found that the statutory provision allowing a fee award, N. Y. Domestic Relations Law § 237, McKinney's Consol.Laws, c. 19, extended only to services rendered in the marital action and related proceedings. The Appellate Division modified the decree by increasing the alimony payments to Susan but reducing the counsel fees to $282,000. Rosenstiel v. Rosenstiel, 28 A.D.2d 651, 280 N.Y.S.2d 624 (1st Dep't 1967). Both parties appealed, but the Court of Appeals affirmed without opinion, Rosenstiel v. Rosenstiel, 20 N.Y.2d 925, 286 N.Y.S.2d 278, 233 N.E.2d 292 (1967).

Besides the annulment action, the Rosenstiels were involved in a variety of other legal disputes during the same period, in many of which the plaintiff law firm either represented Susan or provided some legal services to her. Among these were an abortive Connecticut annulment action brought by Lewis; a conversion suit brought by Lewis in the New York courts; a replevin action brought by Lewis to recover his furniture and other personal effects that Susan had either retained or sold when the couple separated; a joint action by Susan and the law firm against the St. Paul Fire and Marine Insurance Company on its surety bond to recover for Lewis' failure to make timely support payments; and a number of vendors' actions brought against Susan or against Susan and Lewis for purchases made by Susan during the separation. In this action the law firm sought to recover for its services in each of these suits, as well as for its work on the appeal from the support and attorneys' fee awards in the annulment suit. In addition, the firm sought to recover various disbursements made in connection with several of the other suits mentioned above.

The district court held that it had jurisdiction because the plaintiff had established diversity of citizenship, and the suit was not one for divorce or alimony but simply for attorneys' fees.[2] Having taken jurisdiction, the court held that under New York common law action for "necessaries" the plaintiff could recover for the various services rendered to Susan, although it reduced the plaintiff's claim from a total of $200,000 to $122,615.37. The defendant has appealed, contending that the district court misread the applicable New York law in several significant respects, and that the judgment was therefore grossly inflated. In addition, the defendant contended at oral argument that the district court improperly assumed jurisdiction over the case and should either have dismissed the suit or stayed it to permit a state court to resolve the difficult questions of New York law here presented.

## II.

We must first consider the correctness of the district court's ruling that the suit was not barred by the rule that diversity jurisdiction does not extend to matrimonial actions. This principle has its origin in a dictum in Bar-

2. Judge Tyler's ruling was in accordance with a similar ruling by Judge Tenney in an earlier proceeding. Rosenstiel v. Rosenstiel, 278 F.Supp. 794 (S.D.N.Y.1967).

ber v. Barber, 62 U.S. (21 How.) 582, 584, 16 L.Ed. 226 (1859).

> We disclaim altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony, either as an original proceeding in chancery or as an incident to divorce *a vinculo*, or to one from bed and board.

The three Justices who dissented from the assumption of jurisdiction in *Barber* supplied a rationale for the dictum. The case had been brought as a diversity suit in the district court for Wisconsin to enforce a New York decree for separation and alimony, and the majority held that the court had jurisdiction since the case was not a suit for allowance of alimony, but merely a suit to prevent a valid state court decree from being defeated by fraud. The dissenters

responded that chancery jurisdiction in England had not extended to divorce and alimony, with the result, presumably, that a proceeding seeking such relief did not come within the language, "all suits of a civil nature at common law or in equity," of the diversity statute, 1 Stat. 78.[3] The Court gave support to this reasoning in Maynard v. Hill, 125 U.S. 190, 206, 8 S.Ct. 723, 31 L.Ed.2d 654 (1888), where it noted that the power to grant divorces in England had been divided between the ecclesiastical courts, which could grant divorces from bed and board, and Parliament, which alone could grant absolute divorces.

In Simms v. Simms, 175 U.S. 162, 167, 20 S.Ct. 58, 44 L.Ed. 115 (1899), the Court reaffirmed the *Barber* dictum, although in that case it exercised appellate jurisdiction over a divorce decree of a territorial court.[4] The Court applied

3. The dissenters also argued that during the pendency of the marital relationship, the husband and wife could not legally be citizens of different states. Therefore, they concluded, divorce jurisdiction was barred because the parties by definition could never satisfy the jurisdictional requirements. 62 U.S. (21 How.), at 600–602, 16 L.Ed. 226.

In addition, the dissenters felt that it was not "in accordance with the design and operation" of the federal government that it should "assume to regulate the domestic relations of society." It was beyond the proper competence of the federal courts, the dissenters wrote,

> to control the duties or the habits of the different members of private families in their domestic intercourse. This power belongs exclusively to the particular communities of which those families form parts, and it is essential to the order and to the very existence of such communities.

*Id.* at 602, 16 L.Ed. 226. Thirty years later the Court appeared to adopt this portion of the dissenters' view, writing, "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the law of the States and not to the laws of the United States," In re Burrus, 136 U.S. 586, 593–594, 10 S.Ct. 850, 853, 34 L.Ed. 500 (1890). The issue in that case, child custody, was held to be "one in regard to which neither the Congress of the United States nor any authority of the United States has any special jurisdiction," thus apparently extending the prohibition to judicial as well as legislative action. See Hart & Wechsler,

The Federal Courts and the Federal System 1189 (2d ed. 1973).

4. In De la Rama v. De la Rama, 201 U.S. 303, 26 S.Ct. 485, 50 L.Ed. 765 (1906), the Court again heard an appeal from a divorce decree granted by a territorial court, but it cited only two reasons supporting the dictum in *Barber* that federal courts lack diversity jurisdiction in divorce actions or suits for alimony: first, that husband and wife cannot normally be citizens of different states, and second, that a suit for divorce involves no pecuniary value. 201 U.S. at 307, 26 S.Ct. 485. The Court has subsequently rejected the first justification for the *Barber* rule, see Haddock v. Haddock, 201 U.S. 562, 571, 26 S.Ct. 525, 50 L.Ed. 867 (1906); Williamson v. Osenton, 232 U.S. 619, 625–626, 34 S.Ct. 442, 58 L.Ed. 758 (1914), and the second has been criticized, see Spindel v. Spindel, 283 F.Supp. 797, 812 (E.D.N.Y.1968); Vestal & Foster, Implied Limitations on the Diversity Jurisdiction of Federal Courts, 41 Minn.L.Rev. 1, 28 (1956). In any event, by twice taking jurisdiction in appeals from territorial divorce actions, the Court seemed to suggest that these actions are within the judicial power of the federal courts but outside the scope of the diversity statute. See Wright, Federal Courts § 25, at 84.

Judge Weinstein's criticism that in *Simms* and *De la Rama*, "the Court *said* federal courts lacked jurisdiction and then *acted* as if they possessed judicial power over divorce cases," Spindel v. Spindel, *supra*, 283 F. Supp. at 803 (emphasis in original), while seemingly unanswerable if the Court was

the dictum in Ohio ex rel. Popovici v. Agler, 280 U.S. 379, 50 S.Ct. 154, 74 L. Ed. 489 (1930), in refusing to issue a writ of prohibition against an Ohio proceeding in which a consul was sued for divorce, despite the constitutional provisions on the subject and the statutory reservation to the federal courts of exclusive jurisdiction "of all suits and proceedings" against consuls and the grant of jurisdiction of such suits and proceedings to the district courts and the Supreme Court. After stating that the exclusive jurisdiction statutes "do not purport to exclude the State Courts from jurisdiction except where they grant it to Courts of the United States," Mr. Justice Holmes, no tyro in legal history, continued, *id.* at 383–384, 50 S.Ct. at 155:

> Therefore, they do not affect the present case if it be true as has been unquestioned for three-quarters of a century that the Courts of the United States have no jurisdiction over divorce. If when the Constitution was adopted the common understanding was that the domestic relations of husband and wife and parent and child were matters reserved to the States, there is no difficulty in construing the instrument accordingly, and not much in dealing with the statutes. 'Suits against consuls and vice-consuls' must be taken to refer to ordinary civil proceedings and not to include what formerly would have belonged to the ecclesiastical Courts.

We have no disposition to question that conclusion, whether the history was right or not, cf. Spindel v. Spindel, *supra*, 283 F.Supp. at 802–803. More than a century has elapsed since the *Barber* dictum without any intimation of Congressional dissatisfaction. It is beyond

the realm of reasonable belief that, in these days of congested dockets, Congress would wish the federal courts to seek to regain territory, even if the cession of 1859 was unjustified. Whatever Article III may or may not permit, we thus accept the *Barber* dictum as a correct interpretation of the Congressional grant.

However, the scope of the exception relating to matrimonial actions, like that of the related one concerning matters of probate and administration, has been rather narrowly confined, see generally Hart & Wechsler, *supra*, at 1186–92 (2d ed. 1973). As already noted, in the very case enunciating the matrimonial exception the Supreme Court sustained federal jurisdiction to enforce an alimony award already made by a state court in a divorce proceeding. *Accord*, Sistare v. Sistare, 218 U.S. 1, 16–17, 30 S.Ct. 682, 54 L.Ed. 905 (1910). We have upheld federal jurisdiction in an action to determine whether a Connecticut divorce decree was invalid as having failed to give full faith and credit to a previous Nevada decree, Southard v. Southard, 305 F.2d 730, 731 (2 Cir. 1962). In Harrison v. Harrison, 214 F.2d 571 (4 Cir.), cert. denied, 348 U.S. 896, 75 S.Ct. 217, 99 L.Ed. 704 (1954), the court sustained federal jurisdiction in a diversity action to declare a Mexican divorce decree invalid and to order payment of past and future alimony under an earlier Ohio decree. A different view has been taken where the amounts ordered to be paid as alimony were subject to modification by the state court, Lynde v. Lynde, 181 U.S. 183, 187, 21 S.Ct. 555, 45 L.Ed. 810 (1901); Morris v. Morris, 273 F.2d 678 (7 Cir. 1960), a view paralleled in the field of custody and visitation by our decision in Hernstadt v. Hernstadt, 373 F.2d 316 (2 Cir. 1967).

proceeding on a *constitutional* basis, *id.* at 804, is lacking in force if, as indicated, the basis for lack of jurisdiction was the language of the diversity statute. While the latter spoke of "all suits of a civil nature at common law or in equity," the appellate jurisdiction statute applicable in *Simms*, Rev. Stat. § 702, empowered the Supreme Court

to review "[t]he final judgments and decrees of the supreme court of any Territory," and the statute applicable in *De la Rama*, 32 Stat. 695, permitted it to review "the final judgments and decrees of the supreme court of the Philippine Islands in all actions, cases, causes and proceedings . . . ."

Other relevant cases will be found in Judge Weinstein's learned opinion in Spindel v. Spindel, *supra,* 283 F.Supp. at 810–811.

As indicated, the bulk of the complaint is concerned with legal services in no way connected with the matrimonial action, recoverable only in an action at common law for necessaries. The only claim that could have been asserted in the matrimonial action was that for services on the appeal relating to alimony and counsel fees. It may well be that this claim would have been subject to dismissal for lack of federal jurisdiction if it had stood alone. Assuming that to be true, we need not debate whether the doctrine of pendent jurisdiction nevertheless would permit its consideration here,[5] in view of our holding that, for closely related reasons, this claim lies within the exclusive jurisdiction of the New York courts.

### III.

The holding that, with one possible exception, federal jurisdiction was not barred by the dictum in Barber v. Barber, *supra,* 62 U.S. (21 How.) at 584, 16 L.Ed. 226, does not necessarily entail a conclusion that the district court should have adjudicated this action. It would be difficult to think of a case where in-vocation of federal jurisdiction by a plaintiff was less justified than here; indeed, anyone challenged to produce an example why diversity jurisdiction should be abolished or severely curtailed would hardly have conceived so dramatic an illustration. The action not only presents the anomaly of a jurisdiction intended to protect out-of-staters against local prejudice being invoked by an instater,[6] see ALI, Study of the Division of Jurisdiction Between State and Federal Courts 99–110 (1968), but the instater is a law firm that has practiced, long and successfully, in the New York courts. The defendant, although a resident of Connecticut or later of Florida, maintained a New York City apartment and his business interests were focused in New York. The services for which compensation is sought were rendered in New York courts. Most important of all, decision requires exploration of a difficult field of New York law with which, because of its proximity to the exception for matrimonial actions, federal judges are more than ordinarily unfamiliar. Moreover, the claim for services on appeal on the award of alimony and counsel fees necessitates the interpretation of a decree of a New York Supreme Court Justice who sits only a few hundred yards from the Federal Courthouse in New York City.[7]

5. It could be argued that pendent jurisdiction cannot overcome a lack of federal jurisdiction arising from Article III. But, apart from the confusion whether or not the Supreme Court has been proceeding on constitutional rather than statutory grounds, see note 4 *supra,* many instances of ancillary jurisdiction in diversity cases project the court into areas not covered by Article III, although the constitutional lack of jurisdiction arises from the identity of the parties rather than the subject matter. See Hart & Wechsler, *supra,* at 1079–80. Similarly, in pendent jurisdiction cases involving related federal and state claims, the federal courts have been held to have constitutional power to exercise jurisdiction over the entire "case." United Mine Workers v. Gibbs, 383 U.S. 715, 725–726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). There would seem to be no constitutional bar to extending pendent jurisdiction to closely related claims as part of the same "controversy" under 28 U.S.C. § 1332, even though those claims, standing alone, would not be within the court's jurisdiction. *Cf.* Leather's Best, Inc. v. S.S. Mormaclynx, 451 F.2d 800, 810 n.12 (2 Cir. 1971). Of course, as the *Gibbs* Court pointed out, the courts would retain the discretion not to consider the pendent claim if considerations of judicial economy, convenience, and fairness to litigants were not present, 383 U.S. at 726, 86 S.Ct. 1130.

6. Although the complaint alleges that the members of the plaintiff law firm are residents of New York and New Jersey, the overwhelming majority reside in New York.

7. At argument we asked why plaintiff had brought this action in such an inappropriate forum. The answer was that defendant had taken the position that the New York courts had no power to make an award for necessaries. Examination of the papers submitted to support this shows that defendant's claim was rather that, save for services on

Despite the expansive language used thirty years ago in Meredith v. Winter Haven, 320 U.S. 228, 236–238, 64 S.Ct. 7, 88 L.Ed. 9 (1943), we do not believe that the Supreme Court today would demand that federal judges waste their time [8] exploring a thicket of state decisional law in a case such as this. Some movement away from *Meredith* took place in Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959),[9] and again in Kaiser Steel Corp. v. W. S. Ranch Co., 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968). Although these cases concerned state law issues important to the state itself, courts of appeals, inspired no doubt by feelings akin to those we have voiced, have stayed diversity actions for resolution of difficult state law problems by the state courts even when the issues were of concern mainly to the parties. See United Services Life Ins. Co. v. Delaney, 328 F.2d 483 (5 Cir. 1964); Reichman v. Pittsburgh Nat'l Bank, 465 F.2d 16, 18 (3 Cir. 1972) (similar issues concerning construction of trust pending in Pennsylvania Orphans' Court which has "special ability . . . to decide those issues in view of its exclusive state jurisdiction over trusts and estates"); Magaziner v. Montemuro, 468 F.2d 782, 787 (3 Cir. 1972) (expertise of Family Division of Penn-

sylvania Court of Common Pleas with respect to child support). As the two latter cases suggest, there is particularly strong reason for abstention in cases which, though not within the exceptions for matters of probate and administration or matrimony and custody actions, are on the verge, since like those within the exception, they raise issues "in which the states have an especially strong interest and a well-developed competence for dealing with them." Wright, Federal Courts § 25, at 84 (2d ed. 1970). Beach v. Rome Trust Co., 269 F.2d 367 (2 Cir. 1959), is not to the contrary since that case involved "[n]o controlling or obscure question of state law." *Id.* at 374.

■■ In view of these factors, if defendant had made a timely motion for a stay pending plaintiff's initiating appropriate proceedings in the New York courts, the judge should have granted it. From an examination of the transcript below, we think it quite evident that he would have done so. But his efforts to elicit such a motion from defendant's counsel proved unsuccessful. The action was filed on May 10, 1968. After many rounds of motions before a number of judges of the district court, the case was tried on September 1 and 2 and December 7, 1971.[10] Only at that time did de-

the appeal in the matrimonial action, a New York court could not make such an award *in that action.*

8. The word "waste" is appropriate not only because we cannot predict New York law with authority and our attempt to do so prevents a clarification by the state courts that would otherwise have occurred, but also because of the unlikelihood that any of the federal judges who have been concerned with this case will ever have to confront these or similar issues again.

9. The scope of the decision in *City of Thibodaux* was restricted by County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 79 S. Ct. 1060, 3 L.Ed.2d 1163 (1959), decided the same day. The two cases are difficult to reconcile, as both were diversity suits invoking state eminent domain law in which the district court had stayed or dismissed the federal action in favor of a state court de-

termination of the applicable state law. In *City of Thibodaux,* the Court, 6–3, approved the district court's stay as being within the court's discretion. In the *Allegheny County* case, by contrast, the Court, 5–4, held that the district court's dismissal of the diversity suit constituted an abuse of discretion. The majority in *City of Thibodaux* stressed the difficulty of the underlying state law questions, while the majority in the *Allegheny County* case stated that the state law in question was "clear and certain," 360 U.S. at 196, 79 S.Ct. 1060. Although this suggests a possible distinction between the cases, the Court did not expressly rely on the difficulty *vel non* of state law issues and in fact made no apparent effort to reconcile the opinions in the two cases. See Wright, Federal Courts, § 52, at 200–02.

10. Judge Tyler later directed a further trial, which was held on September 21 and October 19, 1972.

fendant's counsel move for a stay, and the judge thought it would be an abuse of discretion for him to grant one at that late date when so much professional and judicial time had already been expended in the federal court. We surely cannot say it was an abuse of discretion for him to have denied one. Compare Louisiana Power & Light Co. v. City of Thibodaux, *supra*, 360 U.S. at 27 n.2, 31, 79 S.Ct. 1070 (Stewart, J., concurring). And so, in his words, we "will treat the merits, painful as that may be."

### IV.

■ As earlier indicated, in attempting to impose upon Lewis Rosenstiel the costs of legal services rendered to Susan during their separation, the plaintiff has relied on the common law action for "necessaries" as applied in New York. The principle behind the suit for necessaries is that until the marriage relationship is severed, the husband is liable to his wife or his wife's creditors for her support and the support of his children. DeBrauwere v. DeBrauwere, 203 N.Y. 460, 96 N.E. 722 (1911); Laumeier v. Laumeier, 237 N.Y. 357, 364, 143 N.E. 219, 221 (1924); Rudnick v. Tuckman, 1 A.D.2d 269, 271, 149 N.Y.S.2d 809, 811 (1st Dep't 1956); cf. Wanamaker v. Weaver, 176 N.Y. 75, 68 N.E. 135 (1903). Although he cannot be charged with every expenditure that she may choose to make, the husband will be held responsible to the wife's creditors for all services and purchases found to have been necessary to support her in a style consistent with her habits and his means. Keller v. Phillips, 39 N.Y. 351, 354 (1868); DeBrauwere v. DeBrauwere, *supra*, 203 N.Y. at 464–465, 96 N.E. at 723; Garlock v. Garlock, 279 N.Y. 337, 340, 18 N.E.2d 521, 522 (1939); Grishaver v. Grishaver, 225 N.Y.S.2d 924, 935–936 (Sup.Ct. 1961); Tausik v. Tausik, 38 Misc.2d 11, 235 N.Y.S.2d 776 (Sup.Ct.1962). The wife can maintain her action for necessaries even after the couple separates, as long as she did not cause the separation by her misconduct. Pearson v. Pearson,

230 N.Y. 141, 146, 129 N.E. 349, 350 (1920); cf. Griston v. Rosenfield, 280 App.Div. 273, 113 N.Y.S.2d 616 (1st Dep't 1952); Steisel v. Gratzer, 3 Misc. 2d 816, 66 N.Y.S.2d 526 (Sup.Ct.1947). Only termination of the marriage or a judicial or private financial settlement will relieve the husband of his liability for necessaries under most circumstances. Winter v. Winter, 191 N.Y. 462, 84 N.E. 382 (1908); Turner v. Woolworth, 221 N.Y. 425, 429, 117 N.E. 814, 815 (1917); Elder v. Rosenwasser, 238 N.Y. 427, 432, 144 N.E. 669, 671 (1924); Ashmead v. Sullivan, 198 App. Div. 885, 888, 191 N.Y.S. 205, 206–207 (1st Dep't 1921); Rudnick v. Tuckman, *supra*; Marson v. Marson, 6 App.Div.2d 786, 175 N.Y.S.2d 82 (1st Dep't 1958), aff'd, 6 N.Y.2d 925, 190 N.Y.S.2d 998, 161 N.E.2d 212 (1959).

Traditionally, the action for necessaries has included food, clothing, shelter, medical bills, and incidental living costs of various sorts, see Laumeier v. Laumeier, *supra*; Bloomingdale Bros. v. Benjamin, 200 Misc. 1108, 112 N.Y.S.2d 33 (City Ct., New York City, 1952); Abraham & Straus v. Teller, 37 Misc.2d 797, 236 N.Y.S.2d 435 (Civil Ct., New York Co., 1962). However, it has also been held to include necessary counsel fees that the wife may incur, Dravecka v. Richard, 267 N.Y. 180, 196 N.E. 17 (1935); Naumer v. Gray, 28 App.Div. 529, 51 N.Y.S. 222 (2d Dep't 1898); Friou v. Gentes, 11 App.Div.2d 124, 204 N.Y.S.2d 836 (2d Dep't 1960); Gallin v. Stafford, 10 A.D.2d 915, 200 N.Y.S.2d 498 (1st Dep't 1960), aff'd 9 N.Y.2d 894, 216 N.Y.S.2d 705, 175 N.E.2d 832 (1961). Such fees have been allowed as "necessaries" for purposes ranging from the wife's defense against criminal charges, see, e. g., Elder v. Rosenwasser, *supra*, to costs incurred in connection with the marital dispute itself, Goldberg v. Keller, 236 App.Div. 541, 260 N.Y.S. 65 (2d Dep't 1932). The principles applicable to recovery of legal fees in a marital dispute are similar to those applicable in a suit for necessaries of other kinds, although they are complicated

somewhat by § 237 of the New York Domestic Relations Law. That statute provides for the award of counsel fees in marital actions of various sorts, including proceedings

(1) to annul a marriage or declare the nullity of a void marriage, or (2) for a separation, or (3) for a divorce, or (4) to declare the validity or nullity of a judgment of divorce rendered against the wife who was the defendant in any action outside the State of New York and did not appear therein where the wife asserts the nullity of such foreign judgment, or (5) by a wife to enjoin the prosecution in any other jurisdiction of an action for a divorce, or (6) upon any application to annul or modify an order for counsel fees and expenses made pursuant to this subdivision. . . .

Prior to the amendment and recodification of the statute in 1963, it was understood that the statutory provision would be the exclusive remedy in any marital suit in which the wife sought counsel fees, but that if the wife or her attorney had not requested a statutory award, they could sue for fees under the common law action for necessaries. Naumer v. Gray, *supra;* Elder v. Cochrane, 209 App.Div. 665, 205 N.Y.S. 292 (2d Dep't 1924); Gallin v. Stafford, *supra.* This rule was criticized as cumbersome and productive of judicial inefficiency, see, *e. g.,* Horn v. Schmalholz, 150 App.Div. 333, 134 N.Y.S. 652 (2d Dep't 1912); Handelman v. Peabody, 285 App.Div. 689, 140 N.Y.S.2d 374 (1st Dep't 1955), but the New York courts declined to depart from it.

█ There was some conjecture that the 1963 amendments had made the statute the sole remedy for obtaining fees for legal services rendered in a matrimonial action, see Christensen v. Christensen, 39 Misc.2d 370, 373, 240 N.Y.S.2d 797, 800 (Sup.Ct.1963); Tompkins & Lauren v. Glass, 44 Misc.2d 239, 253 N.Y.S.2d 465 (Civil Ct., New York Co., 1964); Ellis v. Shapiro, 56 Misc.2d 379, 288 N.Y.S.2d 841 (Civil Ct., New York Co.), aff'd, 57 Misc.2d 633, 293 N.Y.S.2d

26 (Sup.Ct.1968), but the lower New York courts appear to have determined that the common law action is still available when a statutory request is not made. Levine v. Levine, 48 Misc.2d 15, 263 N.Y.S.2d 997 (Civil Ct., New York Co., 1965), aff'd, 50 Misc.2d 39, 269 N.Y.S.2d 243 (Sup.Ct.1966); Schwartz v. Aberbach, 66 Misc.2d 246, 319 N.Y.S.2d 1021 (Civil Ct. Bronx Co., 1971). Similarly, if the wife brings a *new* action to enforce or modify an earlier decree, she or her lawyer can bring a subsequent action for necessaries to collect counsel fees for that suit from the husband, Gallin v. Stafford, *supra;* Friou v. Gentes, *supra.* But if the wife or her attorneys elect the statutory remedy in a single marital action, they cannot later bring a suit to recover counsel fees relating to that action, Turner v. Woolworth, *supra;* Dravecka v. Richard, *supra.*

The question here is whether the wife's attorneys can have it both ways —an allowance under § 237 for counsel fees at trial and an action for necessaries for counsel fees on appeal. It is plain enough that the attorneys could have requested a supplementary allowance under § 237 for services on the appeal. See Carlo v. Carlo, 30 A.D.2d 530, 291 N.Y.S.2d 410 (2d Dep't 1968). Authority is scant whether they must. The only case directly on point which has been cited to us, Tompkins & Lauren v. Glass, *supra,* answers that question in the affirmative. The court rendering the decision in the *Tompkins & Lauren* case does not stand high in the New York judicial hierarchy, and we would not feel bound by its decision if we had any reason to believe the New York Court of Appeals would think otherwise. However, we do not. Judge Greenfield's opinion is well-reasoned, and the result accords with the general distaste of the New York courts for resort to the action for necessaries for compensating legal services in a case where an allowance under § 237 is available. Surely the court in which this matrimonial action was tried and which has awarded compensation for legal services to the wife

in the trial is in a far better position to determine reasonable compensation for appeal than another tribunal which comes to the case cold.[11]

■ Judge Tyler, who did not discuss the Tompkins & Lauren decision, was greatly influenced by the fact that, in fixing plaintiff's fees in the matrimonial action, Supreme Court Justice Helman appeared to consider only services rendered through the trial. But that does not mean that Justice Helman was disclaiming jurisdiction with respect to a further allowance for services on appeal. To the contrary, his decree provided "that the parties hereto shall have such other and further relief at the foot of this judgment as may be just and proper in the premises" and "that this order or decree may be enforced or modified only in the Supreme Court." Under these circumstances, the New York law appears to be that once having applied for statutory compensation in the marital action, plaintiff could not seek any further fees except from the court that had made the original statutory award. We take no position on whether an application for a modification of the decree to allow further compensation can still be made. *Cf.* Christensen v. Christensen, *supra;* Davies v. Davies, 65 Misc.2d 480, 318 N.Y.S.2d 97 (Sup.Ct.1971). It suffices that another court, state or federal, cannot lawfully award counsel fees as "necessaries" in the face of a prior statutory allowance in the New York matrimonial action. We therefore reverse the portion of the district court's judgment awarding $32,000 to plaintiff for its services on the appeal from the state court's support decree, without prejudice to any proceeding it may be able to take in the Supreme Court of New York in the matrimonial action.

■ Rosenstiel next challenges the $25,000 award for fees in the replevin action. He argues that counsel fees are not available in an action for necessaries when the wife's suit is frivolous or her defense to a suit is baseless. New York law applies the same standard in determining whether legal services are "necessary" as it does in evaluating other services supplied to the wife. Weidlich v. Richards, 276 App.Div. 383, 94 N.Y. S.2d 546 (1st Dep't 1950). The services must be for the protection and support of the wife, and they must be reasonable and proper, see Lanyon's Detective Agency v. Cochrane, 240 N.Y. 274, 277, 148 N.E. 520, 521 (1925); Steuer v. Hart, 175 App.Div. 829, 162 N.Y.S. 489 (1st Dep't 1916); Rosenblatt v. Wolf, 17 A.D.2d 396, 236 N.Y.S.2d 68 (1st Dep't 1962). The state court granted judgment for Lewis in the replevin action, enabling him to recover his furniture and other possessions, which Susan had retained, and awarding him $150,000 damages for the loss of his property that Susan had disposed of without his permission. In addition, the state court referee pointed out that Susan's defense was founded largely on fabrications and falsehoods, including her wholly baseless claim that some of Lewis' property had been destroyed in a fire when, in fact, she had caused it to be sold. Plaintiff correctly points out that victory is not a prerequisite to recovery of legal fees. But Susan's case in the replevin action was not simply a losing one, it was a sham.[12]

---

11. The New York courts have permitted a jury trial to lawyers and businessmen seeking compensation under the action for necessaries, see, *e. g.*, Lanyon's Detective Agency v. Cochrane, 240 N.Y. 274, 148 N.E. 520 (1925); Elder v. Cochrane, 209 App.Div. 665, 205 N.Y.S. 292 (2d Dep't 1924); Kahn v. Ronson, 72 Misc.2d 551, 340 N.Y.S.2d 344 (Sup.Ct.1972), although plaintiff mercifully did not seek one here.

12. Plaintiff notes that it represented Susan only during the preliminary stages of the replevin action and was not involved in the case at the time Susan presented her allegedly fabricated defense. While we assume plaintiff was entirely blameless, its own clean hands do not make "necessary" the rendition of legal services to the wife in a defense she must have known to be meritless. *Cf.* Schussheim v. Cohen, 16 N.Y.S.2d 989 (Sup.Ct.1939); Savage v. Savage, 54 N. Y.S.2d 441 (Sup.Ct.1945). Plaintiff's remedy lies against Susan.

Although we have not been able to find any New York cases directly in point, we do not think the New York courts would require a husband to underwrite his wife's legal fees under these circumstances. To permit the wife to impose huge attorney's fees on her husband in a meritless defense to a suit he had been forced to bring against her would encourage frivolous litigation and impose a double burden on the husband in his efforts to vindicate his rights. It would seem odd, at the least, to require Lewis to pay debts incurred by Susan in a unjustified attempt to block him from recovering his own property. We therefore reverse the award of $25,000 to plaintiff for defense of the replevin action and direct that plaintiff recover nothing against Lewis for these services.

■ The next major item that the defendant challenges is the award of $55,000 to the plaintiff for its services in the consolidated vendors' actions. The district court granted plaintiff $40,000 for its services in the trial of these actions, and $15,000 for its services on appeal. Lewis does not contend that the defense of the vendors' actions was frivolous, nor do we find it to be so. However, he asks us to award legal fees only in accordance with the percentage that he was required to pay in the joint actions against Susan and himself. We see no basis for doing this. Once it is determined that the legal services rendered to the wife were "necessary," the court must give judgment against the husband for the reasonable value of the services rendered. Lewis is therefore liable for all "necessary" legal services rendered in the vendors' actions prior to the date of the support decree, December 28, 1966. Since the trial of the actions took place prior to that date, we affirm the $40,000 award for legal services rendered in the trial.

■ The $15,000 awarded for the appeal in the vendors' actions stands differently. The record shows that the plaintiff did not render any significant services with regard to the appeal until well after the date of the support judgment. Since under New York law an alimony award is held to provide for all "necessaries" that the wife might incur except for legal fees in further marital litigation, People ex rel. Commissioners of Charities v. Cullen, 153 N.Y. 629, 635–636, 47 N.E. 894, 895–896 (1897); Turner v. Woolworth, *supra*; Dravecka v. Richard, *supra*; Klein v. Dula, 217 App.Div. 473, 217 N.Y.S. 221 (1st Dep't 1926); Berry v. Jaworski, 187 Misc. 481, 67 N.Y.S.2d 400, aff'd, 271 App. Div. 932, 68 N.Y.S.2d 432 (1947), the plaintiff cannot obtain reimbursement from the husband for these post-judgment services rendered in a commercial contract suit. We therefore reverse the award of $15,000 for services on the appeal from the consolidated vendors' actions and direct that plaintiff take nothing from Lewis on that account.[13]

■ The remaining sums are all relatively small. The parties have not said much about them, nor shall we. The district court awarded plaintiff $3,000 for its services in the surety bond suit against the St. Paul Fire Marine Insurance Company, which Susan instituted when Lewis failed to make timely alimony payments. New York law permits recovery of counsel fees as necessary for services rendered in a separate suit to enforce a support decree, see Sheer v. Foley, 145 Misc. 819, 260 N.Y. S. 252 (City Ct., New York City, 1932); Gallin v. Stafford, 18 Misc.2d 786, 791, 188 N.Y.S.2d 137, 143 (City Ct., New York City, 1959), rev'd on other grounds, 10 A.D.2d 915, 200 N.Y.S.2d 498 (1st Dep't 1960), aff'd, 9 N.Y.2d 894, 216 N.Y.S.2d 705, 175 N.E.2d 832 (1961); In re Freundlich's Estate, 112 N.Y.S.2d 653 (Sur.Ct., New York Co., 1952). Since it appears that no counsel fees have previously been sought or awarded in the surety bond suit, we af-

13. It goes without saying that we are not ruling on plaintiff's rights against Susan.

firm the award of $3,000 as reasonable compensation for plaintiff's services in that action.

■ The district court granted plaintiff $2,000 for its part in the Connecticut annulment action brought by Lewis prior to the institution of the New York annulment suit. Once again, the services were necessary and the award appears reasonable. We therefore affirm.

Finally, the district court granted $500 for plaintiff's services in the conversion suit brought by Lewis in New York Supreme Court. Defendant does not contend that the minimal services rendered in that action were not "necessaries," and we therefore affirm that award.

The defendant concedes that $1,499.45 of the disbursements granted by the district court were in connection with actions that were "necessary" to Susan's defense. However, he challenges the remaining $3,615.92 of disbursements. Since the district court did not indicate in what actions those were incurred, we must remand for a determination whether the disbursements were in connection with an action for which the plaintiffs can here recover counsel fees. If those disbursements were incident to any of the allowances of compensation we have upheld, they also should be awarded to plaintiff. However, if they were incident to any of the awards that we have reversed, they must be denied. Perhaps it is not too much to hope that the parties can agree on this relatively small item and spare Judge Tyler from having to conduct another trial.

If our decision here has inadvertently rent a seam in New York matrimonial law, we trust the New York courts will speedily repair it in some other case. The injury was not of our making.

Judgment affirmed in part, reversed in part, and remanded in part. Appellant may recover half his costs.