Gretchen Leitzell JOHNSTON,
Petitioner,

v.

Oswald L. JOHNSTON, Jr., Respondent.

No. 87 CIV. 3497 (PKL).

United States District Court,
S.D. New York.

Aug. 17, 1987.

G. Russell Miller, New York City, for petitioner.

Jackson & Nash, New York City (Christopher S. Rooney, of counsel), for respondent.

## OPINION & ORDER

LEISURE, District Judge:

Respondent has moved for a partial stay of arbitration. Petitioner has cross-moved for an order compelling arbitration on all issues.[1]

### Factual Background

On May 11, 1987, Gretchen Leitzell Johnston ("Mrs. Johnston"), a resident of New York, commenced an arbitration proceeding against her former husband, Oswald L. Jonston, Jr. ("Mr. Johnston"), a resident of Maryland. Mr. and Mrs. Johnston were married in Maryland on September 25, 1965. They had one child, a son. On November 1, 1968, they entered into a separation agreement (the "Agreement"), which was subsequently approved and referred to in a decree of divorce (the "Decree") issued by the Circuit Court of Baltimore City on December 6, 1968. The Decree states that it shall be "subject to the further Order of the Court in the premises." The Agreement contains an arbitration clause.

In her demand for arbitration, Mrs. Johnston seeks: (1) to enforce a provision of the Agreement which provides that Mr. Johnston shall make an apartment (the "Apartment") available to Mrs. Johnston and pay monthly maintenance charges (the "Apartment Provision"); (2) to collect alleged arrearages in alimony owed by Mr. Johnston; (3) to modify the Agreement and Decree to require Mr. Johnston to contribute child support after his son has reached the age of 21; and (4) to modify the Agreement and Decree to require Mr. Johnston to pay increased alimony.

On May 12, 1987, Mrs. Johnston filed a petition for an order to show cause in the Supreme Court of the State of New York. In an order docketed on May 19, 1987, the Hon. Bruce Wright granted Mrs. Johnston's petition. Mr. Johnston was ordered to show cause, on May 27, 1987, why an order should not be made and entered granting Mrs. Johnston certain injunctive relief preserving the status quo between the parties during the arbitration. Pending the hearing on the order to show cause, Justice Green enjoined Mr. Johnston from: (1) interfering with Mrs. Johnston's use of the Apartment; (2) selling or transferring the Apartment; and (3) discontinuing alimony or Apartment maintenance payments.

On May 21, 1987, Mr. Johnston petitioned this Court for removal of the state action on the grounds of diversity of citizenship. In a stipulation dated June 3, 1987, and so ordered by the Court on June 5, 1987, Mr. and Mrs. Johnston reached an agreement regarding the terms of their rights and obligations pending the outcome of the ar-

---

**1.** In their papers filed herein, the parties have continued to use "petitioner" for Mrs. Johnston and "respondent" for Mr. Johnston, as they did in the state action. In fact, Mr. Johnston is properly designated as the petitioner herein be- cause he petitioned this Court for removal of the state action. The Court, however, has followed the parties' practice in the caption and text in order to avoid confusion.

bitration proceeding. Mrs. Johnston also agreed not to contest the removal of the state action to this Court and the Court's exercise of subject matter jurisdiction herein.

On June 11, 1987, Mr. Johnston moved for an order staying the arbitration demanded by Mrs. Johnston to the extent that it concerns modification of the alimony and child support provisions of the Agreement. On June 25, 1987, Mrs. Johnston filed a cross-motion for an order compelling Mr. Johnston to arbitrate all the issues set forth in the demand for arbitration.

### Discussion

The Court "is required to notice and determine the nonexistence of federal question or diversity of citizenship jurisdiction in a removed case on its own motion when not raised by one of the parties." 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3939 at p. 573 (1985). *See also Gardner and Florence Call Cowles Foundation v. Empire Inc.,* 754 F.2d 478, 479 (2d Cir.1985).

In the instant case, Mr. Johnston contends that the Court has subject matter jurisdiction because of the diversity of citizenship of the parties. Matrimonial actions, however, "are a long standing judicially created exception to diversity jurisdiction." *Kowohl v. Roschko,* 659 F.Supp. 910, 911 (E.D.N.Y.1987) (citing *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel,* 490 F.2d 509, 513 (2d Cir.1973) (Friendly, J.)). *See also Petersen v. Petersen,* 640 F.Supp. 719, 720 (S.D.N.Y.1986) (citations omitted). "While the scope of this exception has not been consistently defined, several recent cases in this district have held that disputes arising out of sepa-

ration agreements fall within the exception and thus outside federal jurisdiction." *Petersen,* 640 F.Supp. at 720 (citing *Casaburro v. Daher,* 569 F.Supp. 835, 836 (S.D.N.Y. 1983) (visitation rights); *Brenhouse v. Bloch,* 418 F.Supp. 412, 413, 415–16 (S.D.N.Y.1976) (alimony and child support); *Rosentiel v. Rosenstiel,* 278 F.Supp. 794, 799 (S.D.N.Y.1967) (action to determine validity of divorce decree)). In *Casaburro,* Judge Lasker explained that "federal courts have little experience with the state policies and precedents that govern the construction of [separation] agreements...." 569 F.Supp. at 836. *See also Phillips, Nizer,* 490 F.2d at 515.

It has been held, by contrast, that a breach of contract action based on a separation agreement may be properly cognizable in diversity. *See Graning v. Graning,* 411 F.Supp. 1028, 1029 (S.D.N.Y.1976); *Spindel v. Spindel,* 283 F.Supp. 797, 806, 809–10 (E.D.N.Y.1968); *Richie v. Richie,* 186 F.Supp. 592, 594 (E.D.N.Y.1960). In *Graning,* the Court held that suit to recover on a pre-divorce property settlement was essentially a breach of contract action rather than a dispute over the marital relationship between the parties. 411 F.Supp. at 1029. *Graning,* has been distinguished on the ground that it "involved a simple question of enforcement; the agreement was not questioned on the merits." *Petersen,* 640 F.Supp. at 721.

In this case, it is arguable that the first two issues on which Mrs. Johnson demands arbitration—enforcement of the Apartment Provision and collection of arrearages in alimony—more closely resemble a breach of contract action than "an ongoing matrimonial dispute."[2] *See Petersen,* 640 F.Supp. at 721. It is clear, however, that the remaining two issues—modification of

---

2. It is not obvious that this is true, however, because of the language used in the Decree by the Circuit Court of Baltimore City. The Decree provides, in pertinent part, as follows:

IT IS FURTHER ORDERED that the Agreement between the parties dated November 1st, 1968, and filed herein on November 14th, 1968 be and the same is hereby *approved and, in accordance therewith,* the Plaintiff shall have the guardianship and custody of ANTHONY DUNCAN JOHNSTON, minor child of the parties, and the Defendant shall pay directly to the Plaintiff and not through the

Probation Dept. of the Supreme Bench for the support and maintenance of said minor child *as provided in said Agreement,* with the right to the Defendant to visit and have said minor child *as provided in said agreement,* and it is further Ordered that the Defendant shall pay, directly to the Plaintiff and not through the Probation Dept. of the Supreme Bench, permanent alimony *as provided in said Agreement, all subject to the further Order of this Court in the premises.*

Mr. Johnston's obligations to provide child support and alimony—are part of a continuing matrimonial dispute, not simply an action for breach of contract. Therefore, the Court is without subject matter jurisdiction to decide this controversy insofar as it involves modification of alimony and child support. *See Phillips, Nizer,* 490 F.2d at 514–15 (approving cases holding no federal jurisdiction where amounts ordered to be paid "were subject to modification by the state court"); *Bossom v. Bossom,* 551 F.2d 474, 475 (2d Cir.1976) (significant "meddling with the judgment of divorce" brings case within matrimonial exception).

It would be contrary to principles of efficiency, fairness to the litigants, judicial economy, and common sense for this action to proceed in federal court on the first two issues in the demand for arbitration and to continue in state court on the remaining issues.[3] *Cf. Bossom,* 551 F.2d at 475 (Federal court may "decline jurisdiction if the action is 'on the verge' of the exception" relating to matrimonial actions.); *Kowohl,* 659 F.Supp. at 911–12 (application of *Bossom* rule). Accordingly, the Court declines jurisdiction over this matter in its entirety.[4] This action is hereby remanded, pursuant to 28 U.S.C. § 1447(c), to the Supreme Court of the State of New York.

---

(emphasis added). By its terms, the Decree does not make clear whether the Agreement was incorporated by reference or whether it was merged therein. Resolution of this ambiguity would require "exploration of a difficult field of [state] law with which ... federal judges are more than ordinarily unfamiliar." *Phillips, Nizer,* 490 F.2d at 515.

3. Even if it were argued that the "breach of contract" issues (enforcement of the Apartment Provision and collection of arrearages in alimony) fall within diversity jurisdiction and that the remaining issues should be entertained under pendent jurisdiction, the Court would exercise its discretion not to entertain the pendent claims. *See Phillips, Nizer,* 490 F.2d at 515 n. 5. It would be inefficient and imprudent for the Court to devote its resources to "exploring a thicket of state decisional law" in this case. *Id.* at 516.

4. Although the foregoing issues arise in the context of an arbitration proceeding, the Court would ultimately be called upon to confirm or vacate the arbitrator's decision. Even if the arbitration context distinguishes this case from others involving direct modification of a state divorce decree by a federal court, however, the *Bossom* rule is clearly applicable. This action is at least "on the verge" of the matrimonial exception, there is no apparent "obstacle to a full and fair determination in the state courts," and the "interests of justice would be served" by remanding the case to the state courts "in view of their great familiarity with matrimonial disputes and the absence of any such expertise by the federal courts." *See Bossom,* 551 F.2d at 475.